CASINO PROPERTIES, INC., Managing General Partner; and HACIENDA OPERATING LIMITED PARTNERSHIP, a Nevada Limited Partnership dba HACIENDA RESORT HOTEL AND CASINO, Appellants, v. KELLY ANDREWS; and DAVID DELROSSI and JOAN P. DELROSSI, Individually and as Parents and Guardians of DAVID JOHN PAUL DELROSSI, II, a Minor, and EILEEN DELROSSI, a Minor, and DIANNA DELROSSI, a Minor, and PAULA DELROSSI, a Minor, Respondents.

No. 25198

February 29, 1996

911 P.2d 1181

*Vargas & Bartlett* and *Debra B. Robinson,* Reno, for Appellants.

*Melvin S. Lipman, Chtd.,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

Respondents David and Joan DelRossi, husband and wife, their four young children, and their adult niece, Kelly Andrews, filed suit against appellants for intentional and negligent infliction of emotional distress, failure to provide protection from abuse by appellants' employees, and invasion of privacy. Respondents were awarded $15,000 at arbitration, appellants filed a motion for a trial de novo, and respondents filed a motion to strike appellants' motion. The district court granted respondents' motion and refused to grant a trial de novo on the basis that appellants did not defend the arbitration action in good faith. We conclude that the district court's refusal to grant a trial de novo was proper.

### FACTS

In August 1993, respondents were guests at appellant Hacienda Resort Hotel and Casino (Hacienda) in Las Vegas for one week. They had two rooms next to each other, each secured by David DelRossi's credit card. During their stay, the assistant hotel manager, Paula O'Donnell, reviewed a computer report which indicated that respondents' bill for their hotel rooms exceeded David's credit card limit. O'Donnell made several attempts to reach David to discuss payment terms but was unsuccessful. O'Donnell then ordered the security guards to perform a "lock-out" on both of the rooms. A lock-out is a procedure whereby the security guards lock the guest out of the room and deny the guest access to his or her personal belongings therein. This forces the guest to come to the front desk to pay his or her bill.

The security guards successfully locked out David and Joan's room and then attempted to do the same on the second room where Andrews and all of the children were staying. The security guard informed Andrews that there was a problem with the bill and that he was to escort her to the front desk so that she could straighten out the problem. Andrews refused to go on account of the fact that one of the children was ill and the others were allegedly near hysteria due to the guard's intrusion into the room. Despite Andrews' concerns, the security guard forced Andrews to go with him to the front desk but allowed the children to remain in the room. At the front desk, Andrews told O'Donnell that she was not responsible for the payment of the bill, and O'Donnell eventually located David who paid the bill in full.

In response to the actions taken by O'Donnell and the security guards, respondents filed an amended complaint against appellants in February 1993, alleging causes of action for negligent and intentional infliction of emotional distress, invasion of privacy, and appellants' failure to provide protection from their abusive employees.

On March 18, 1993, respondents' counsel requested production of documents, including copies of appellant Hacienda's employment and security manuals, by June 15, 1993. On June 16, 1993, Hacienda claimed that the employment and security manuals were irrelevant and refused to produce them, although it did make O'Donnell and the security guards available for deposition. The parties met with the discovery commissioner on July 14, 1993, to discuss the disputes over production. The next day, Hacienda wrote a letter to respondents stating that it would review its employment and security manuals to determine if the lock-out procedures existed in written form. On August 2, 1993, Hacienda wrote another letter to respondents stating that such written information did not exist but that the hotel managers and assistant managers had knowledge of the procedures. Respondents claimed that they could not depose those parties because arbitration was set for August 13, 1993, and it was too late to give timely notice of depositions.

Respondents delivered their pre-arbitration statement in a timely fashion, but appellants delivered their pre-arbitration statement to respondents the day before the arbitration. In their pre-arbitration statement, appellants informed respondents for the first time that O'Donnell, a key witness, would not be present in person but would be available for questioning via telephone.

The arbitration hearing was held on August 13, 1993, and respondents were awarded $15,000 plus attorney's fees. Appellants filed a request for a trial de novo, and respondents filed a motion to strike appellants' request, alleging that appellants

failed to defend the arbitration in good faith pursuant to NAR 22(A).[1] The district court granted respondents' motion, concluding that the appellants failed to defend the arbitration action in good faith, thereby waiving their right to request a trial de novo. Appellants filed a motion for reconsideration which the district court also denied, concluding that the defense had not prepared for the arbitration.

## DISCUSSION

The purpose of Nevada's Court Annexed Arbitration Program "is to provide a simplified procedure for obtaining a prompt and equitable resolution of certain civil matters." NAR 2(A). In Gilling v. Eastern Airlines, Inc., 680 F. Supp. 169 (D. N.J. 1988), a federal court dealing with the issue of good faith participation in arbitration equated "good faith" with "meaningful participation," and determined that if the parties did not participate in a meaningful manner, the purposes of mandatory arbitration would be compromised.[2] Id. at 169-70. We agree with this proposition and conclude that appellants did not defend the case in good faith during the arbitration proceeding because they did not participate in a meaningful manner.

Appellant impeded the arbitration proceedings by repeatedly failing to provide respondents with information in appellants' security and employment manuals regarding lock-out procedures. The information was requested on March 18, 1993, and only on August 2, 1993, ten days before the arbitration hearing, did appellants inform respondents that such information on lock-out procedures did not exist in written form. Appellants had various opportunities to inform respondents that such information did not exist but failed to do so until it was too late for respondents to act on such information. The late date of appellants' disclosure amounted to a lack of meaningful participation because it compromised respondents' ability to depose the proper parties and form an adequate arbitration strategy.

We conclude that the trial court did not abuse its discretion

---

[1] NAR 22(A) states:

The failure of a party or an attorney to either prosecute or defend a case in good faith during the arbitration proceedings shall constitute a waiver of the right to request a trial de novo.

[2] The purposes of New Jersey's mandatory arbitration are "to provide the parties with a quick and inexpensive means of resolving their dispute while, at the same time, reducing the court's caseload." Gilling v. Eastern Airlines, Inc., 680 F. Supp. 169, 169 (D. N.J. 1988). We conclude that these purposes are substantially similar to those set forth in NAR 2(A).

when it refused to grant appellants' request for a trial de novo. Evidence shows that appellants failed to defend their case in good faith, and because of that, the trial judge had the authority to deny the request for a new trial.[3]

### CONCLUSION

The district court's order striking appellants' motion for a trial de novo was proper. Accordingly, we affirm the order.

---

[3]We note that Chamberland v. Labarbera, 110 Nev. 701, 877 P.2d 523 (1994), which requires that the trial judge support an order denying a request for a trial de novo with specific findings and conclusions, is not applicable in this case. The arbitration in the instant case occurred in August 1993, and the district court's denial of appellants' motion occurred in November 1993. *Chamberland,* which was decided in July 1994, specifically states that it applies to all *future* cases. *Id.* at 705, 877 P.2d at 525.