OPINION
 

 By the Court,
 

 Becker, J.:
 

 Respondent Amy Leigh Hartz (“Hartz”) filed a complaint for personal injuries arising from an automobile accident against appellant Angela Gittings (“Gittings”). The matter was referred for mandatory court-annexed arbitration pursuant to the Nevada Arbitration Rules. After the arbitrator entered an award in favor of Hartz, Gittings filed a request for a trial de novo. Hartz moved to strike the request, alleging that Gittings failed to arbitrate in good faith.
 
 See
 
 NAR 22(A). The district court granted the motion, citing several reasons in support of the finding that Gittings’ conduct in the arbitration process amounted to bad faith. The district court’s decision in deciding to strike Gittings’ request for trial de novo was based in significant part on statistics kept by the district court arbitration commissioner. Gittings contends that such statistics cannot be the basis of striking a request for trial de novo. While we conclude that such statistics may be used in determining whether or not a party meaningfully participated in the arbitration process, the district court may not rely upon such statistics without first conducting an evidentiary hearing on the meaning, relevancy and validity of the statistics. We therefore reverse the order of the district court and remand for further proceedings.
 

 FACTS
 

 Gittings allegedly ran a red light and struck the passenger side of Hartz’ vehicle. The impact was significant enough to shatter windows and bend the frame of the Hartz vehicle. Both vehicles were deemed total losses.
 

 Following the accident, Hartz underwent chiropractic treatment and therapy for approximately four months, incurring $2,414.47
 
 *389
 
 in medical expenses. Hartz also missed three weeks of work at $6.50 per hour.
 

 Approximately one month after the accident, Hartz filed a complaint for damages, alleging negligence and negligence per se. Gittings, through counsel provided by her insurer, Allstate Insurance Company (“Allstate”), filed an answer and, pursuant to the Nevada Arbitration Rules, the case was referred to the mandatory court-annexed arbitration program.
 
 See
 
 NAR 1-24. Following the early arbitration conference where the parties discussed proposed discovery and exchanged documents, including witness lists, the arbitrator issued a limited discovery order. The order allowed the parties to serve interrogatories and requests for production of documents and/or admissions. The order also permitted each side to depose the opposing party. In addition, Hartz was ordered to sign medical and employment release authorizations for use by Gittings in obtaining records. Gittings served interrogatories and a request for production of documents on Hartz. Gittings also deposed Hartz. Hartz conducted no discovery.
 

 The arbitration hearing was held on March 18, 1997. Following the hearing, the arbitrator issued a written award in favor of Hartz. The arbitrator awarded Hartz $9,000.00 plus pre-judgment interest and taxable costs. Thereafter, the arbitrator granted Hartz’ motion for attorney’s fees, costs and pre-judgment interest.
 
 [1]
 

 Gittings filed a timely request for a trial de novo. Hartz then moved to strike the request for a trial de novo, asserting that Gittings had “failed to arbitrate in good faith” and that her insurer, Allstate, was using the arbitration process to delay payment of damages.
 

 In support of the motion to strike, Hartz asserted that Gittings did not attend the arbitration hearing and that her counsel called no witnesses and produced no medical evidence in opposition to the testimony presented by Hartz to substantiate her claim. In addition, Hartz argued that Gittings conducted only cursory cross-examination and argument during the arbitration hearing.
 

 Gittings opposed the motion, arguing that her conduct during the arbitration process did not amount to bad faith. Specifically
 
 *390
 
 Gittings noted that she conducted depositions and discovery as authorized by the arbitrator and prepared an arbitration brief.
 
 [2]
 

 During oral argument on the motion, Hartz stressed two additional grounds for striking Gittings’ request for a trial de novo: (1) the statistics compiled by the office of the district court discovery commissioner outlining the percentage of cases in which Allstate had requested a trial de novo, and (2) the fact that Allstate, not Gittings, made the determination to request a trial rather than pay the arbitration award.
 

 The district court granted Hartz’ motion and entered an order striking the request for a trial de novo. Gittings filed a motion for reconsideration. Attached to the motion for reconsideration was an affidavit signed by Gittings indicating she had personally requested a trial de novo. Thereafter, the parties stipulated to set aside the initial order striking Gittings’ request for a trial de novo and agreed that the district court would enter a written decision and order on both the motion to strike and the motion for reconsideration.
 
 [3]
 
 The district court granted the motion to strike and denied the motion for reconsideration. This appeal followed.
 

 DISCUSSION
 

 The Nevada Constitution provides a litigant with the right to a jury trial in civil proceedings. Nev. Const. art. 1, § 3. However, this right can be waived by various means prescribed by law. One of those means is Nevada Arbitration Rule 22 (NAR 22). NAR 22 states that the district court may sanction an arbitration participant by striking a request for a trial de novo if the participant has not acted in good faith. Specifically, “the failure of a party or an attorney to either prosecute or defend a case in good faith during the arbitration proceedings shall constitute a waiver of the right to a trial de novo.” NAR 22(A);
 
 see also Chamberland,
 
 110 Nev. at 704, 877 R2d at 523-24.
 

 For purposes of requesting a trial de novo, this court has equated “good faith” with “meaningful participation” in the arbitration proceedings. Casino Properties, Inc. v. Andrews, 112 Nev. 132, 135, 911 P.2d 1181, 1182-83 (1996) (appellant failed
 
 *391
 
 to defend arbitration in good faith by refusing to produce documents during discovery, failing to timely deliver a pre-arbitration statement and failing to produce a key witness at the arbitration) (citing Gilling v. Eastern Airlines, Inc., 680 F. Supp. 169 (D. N.J. 1988)). However, the important constitutional right to a jury trial is not waived simply because individuals can disagree over the most effective way to represent a client at an arbitration proceeding.
 
 See Chamberland,
 
 110 Nev. at 705, 877 P.2d at 525 (despite failing to conduct discovery or attend arbitration hearing, appellant meaningfully participated in arbitration where liability was not at issue by engaging in cross-examination and disputing alleged injuries).
 

 When a district court strikes a request for a trial de novo, the decision is treated for purposes of jurisdiction as a final order, subject to appellate review. The standard of review on appeal is abuse of discretion.
 
 See Casino Properties, Inc.,
 
 112 Nev. at 135-36, 911 P.2d at 1183;
 
 Chamberland,
 
 110 Nev. at 705, 877 P.2d at 525.
 

 Here, the district court made the following findings:
 

 [T]he defendant did not attend the arbitration hearing. In addition, counsel for the defendant did not call any witnesses to testify. It also appears to be undisputed that the entire arbitration lasted for less than one hour and the majority of the time was utilized for the direct examination of the plaintiff by her own attorney.
 

 Although counsel for the defendant indicates that he vigorously contested the claim of the plaintiff at the arbitration, there appears to have been no argument made regarding the issue of liability. The only issue raised by the defendant through argument was whether the medical treatments received by the plaintiff were excessive. Regardless, the defendant did not introduce any countervailing medical evidence nor did the defendant request the plaintiff to submit to an independent medical examination prior to the arbitration.
 

 With reference to the allegation of the plaintiff that the defendant’s insurance carrier, Allstate Insurance Company, is utilizing the mandatory arbitration program as a method of delay, the court must examine the statistics compiled by the Discovery Commissioner of Clark County regarding requests for trial de novo. The Discovery Commissioner of Clark County concluded that in a recent study that Allstate Insurance Company requests trials de novo in at least 52% of the cases it is involved with. This statistic raises a question in this court’s mind as to whether this percentage con
 
 *392
 
 stitutes bad faith per se in violation of Rule 2(A) of the Nevada Arbitration Rules.
 

 Thus the district court essentially cited six reasons in support of the determination that Gittings’ actions during the arbitration process did not constitute meaningful participation: (1) Gittings’ failure to attend the arbitration hearing, (2) failure to call any witnesses to testify at the hearing, (3) the length of the hearing and the amount of time Gittings used to present her issues at the hearing, (4) failure to contest liability, (5) failure to request an independent medical examination or present any countervailing medical evidence, and (6) the high percentage of trial de novo requests filed by Gittings’ insurer, Allstate, in cases involving Allstate clients.
 
 [4]
 

 Gittings asserts that the district court erred in striking her request for a trial de novo because she did participate in good faith in all forms of discovery permitted by the arbitrator as well as the arbitration hearing itself. Specifically, Gittings argues that she served interrogatories, requested production of documents, and deposed Hartz, but did not request an independent medical examination of Hartz because the arbitrator discovery order did not provide for it. Gittings further argues that she did not need to personally attend the arbitration hearing because liability was not at issue. We agree.
 

 Mere failure of a party to attend or call witnesses in an arbitration hearing does not amount to bad faith or a lack of meaningful participation.
 
 See Chamberland,
 
 110 Nev. at 705, 877 P.2d at 525. Gittings’ decision not to seriously contest liability at the arbitration hearing or seek an independent medical examination provides insufficient grounds for completely striking a demand for a trial de novo under
 
 Chamberland.
 

 [5]
 

 There may be many valid reasons why a party would not wish to expend money at the arbitration stage of a case on medical experts. Effective cross-examination may be sufficient to point out discrepancies in a person’s claim of injury without such testimony, or without presentation of “countervailing medical evidence.” Without detailed information on what actually transpired at the hearing, we are left with bare allegations that Gittings did not defend herself in good faith.
 

 
 *393
 
 Thus four of the six reasons given for the district court’s decision cannot be the basis for striking a request for trial de novo. We are left with the length of the arbitration hearing and the discovery commissioner statistics as the only factors to be considered in evaluating whether Gittings failed to defend the case in good faith under NAR 22.
 

 The Court Annexed Arbitration Program is intended to be a simplified, informal procedure to resolve certain-types of civil cases.
 
 See
 
 NAR 2(A) and (D). It is designed to give the arbitrator a good understanding of the essential factual disputes and the legal positions of the parties. The decisions issued by the arbitrators, as neutral fact finders, are intended to promote settlement of cases at an early stage of the proceedings. Thus it is the substance of the hearing, not its length, that is important in determining the good faith of the participants. A hearing is meaningless when a party simply “goes through the motions” and does not seriously attempt to convey valid objections to the opposing party’s evidentiary or legal contentions.
 

 Gittings does not dispute the district court’s finding that “the entire arbitration proceeding lasted for less than one hour” or that the majority of the hearing involved the direct examination of Hartz by her own counsel. Instead, Gittings contends that a more extensive cross-examination was not necessary to contest the nature and extent of Hartz’ damages and therefore the brevity of the hearing does not support a finding of bad faith.
 

 Since the arbitration hearing was not recorded or reported and the district court was not supplied with a statement of the evidence or proceedings similar to statements described in NRAP 9(d), the district court determined that the hearing was conducted in bad faith solely on the basis of statements contained in the pleadings of the parties. Under such circumstances, the district court had no factual record to support a conclusion that Gittings took a lackadaisical approach to the process.
 
 [6]
 

 Turning to the last issue, the use of statistics, Gittings asserts that the percentage of times that her insurer, Allstate, requests a trial de novo should not be considered in a determination of whether she participated in good faith in the arbitration process.
 

 
 *394
 
 Gittings argues that the insurer is not a party to this action and its percentage of requests for trial de novo does not evidence delay by the insured. In the alternative, Gittings argues that, if an insurer’s percentage of requests for trial de novo can amount to a prima facie showing of bad faith, additional discovery concerning the validity of the statistics is necessary.
 

 We have recently rejected the notion that the actions of an insurance company cannot be attributed to its insured when reviewing an arbitration proceeding.
 
 See
 
 Campbell v. Maestro, 116 Nev. 380, 996 P.2d 412 (2000). Thus, competent statistical information that demonstrates that an insurance company has routinely filed trial de novo requests without regard to the facts and circumstances of each individual case may be used to support a claim of bad faith. However, the statistics in this case are incomplete.
 

 While a comparatively high percentage of de novo requests are filed by Allstate, there is no analysis accompanying the statistics to support a conclusion that the statistics prove that Allstate automatically requests a trial de novo regardless of the arbitration process. For example, no correlation has been shown between requests for trial de novo and verdicts for or against the party who filed the request.
 

 Without an evidentiary hearing or a more comprehensive qualitative and quantitative statistical analysis, the statistics cited by Hartz to the district court were not sufficient to justify termination of proceedings in Hartz’ favor.
 
 [7]
 

 CONCLUSION
 

 In light of the above, we hereby reverse the district court’s order striking the request for trial de novo and remand this matter to the district court for further proceedings consistent with this opinion.
 

 Maupin and Shearing, JJ., concur.
 

 [1]
 

 The general information regarding the facts of the accident and the amount of the award are only relevant because Hartz implies that the award was clearly reasonable and therefore Gittings’ decision to contest it must be based on a desire to harass Hartz or delay payment of a valid claim. The district court did not make such a finding. We take this opportunity to note that bare assertions of this nature are not appropriate foundations for a motion to strike a trial de novo. However, if properly documented, the nature of an arbitration award may be relevant to inquiries under NAR 22(A) or (B).
 

 [2]
 

 The hearing was not reported. Nor did the parties file a statement of evidence or proceedings similar to the types of statements required under NRAP 9(d). Information regarding the conduct of the hearing was based upon assertions contained in the pleadings.
 

 [3]
 

 The initial order of the district court did not contain the required written findings of fact and conclusions of law.
 
 See
 
 Chamberland v. Labarbera, 110 Nev. 701, 705, 877 P.2d 523, 535 (1994).
 

 [4]
 

 Hartz argues that the portion of the district court’s order referring to the statistics is mere dictum. However, the language of the order gives the impression that this issue was a major factor in the district court’s decision.
 

 [5]
 

 Sittings’ conduct, however, may be sufficient to support an alternative sanction, such as limiting the issues to be tried to damages.
 
 See
 
 NAR 22(B).
 

 [6]
 

 If an arbitrator makes detailed factual findings illustrating a lackadaisical attitude, such findings might be sufficient to support a finding of bad faith even without a transcript of the arbitration hearing or an NRAP 9(d) type of statement.
 

 [7]
 

 We recognize that the bare statistics create the impression that certain insurance carriers are abusing the arbitration process, and we would have no problem with supporting the denial of a jury trial if a hearing produced competent evidence to substantiate such a conclusion. We are not, however, suggesting that an extensive evidentiary hearing would be necessary in each case. It is conceivable that a detailed statistical analysis, properly authenticated, could be used in more than one proceeding or that testimony taken in one hearing might be admissible in other hearings involving the same carrier under the doctrine of collateral estoppel.