**136 Nev., Advance Opinion 80**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JOHN S. WALKER; AND RALPH ORTEGA, Petitioners, vs. THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE; AND THE HONORABLE BARRY L. BRESLOW, DISTRICT JUDGE, Respondents, and SHEILA MICHAELS; AND KATHERYN FRITTER, Real Parties in Interest. | No. 80358 |



FILED

DEC 10 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order denying two motions to strike trial de novo demands.

*Petition denied.*

William R. Kendall, Reno,
for Petitioners.

Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno; Law Office of S. Denise McCurry and Adam P. McMillen, Reno,
for Real Parties in Interest.

BEFORE PICKERING, C.J., HARDESTY and STIGLICH, JJ.

20- 44884

## OPINION

By the Court, PICKERING, C.J.:

"Extraordinary relief should be extraordinary": real parties in interest, Sheila Michaels and Katheryn Fritter, state the principle aptly. And while the facts of the dual arbitrations underlying this petition are unfortunate, there is nothing in the resulting interlocutory district court decision challenged here which clears that "extraordinary" bar. To the contrary, the petition raises a factual question limited to the practice of one particular attorney of the insurer for both Michaels and Fritter, which will be appealable by the petitioners, John S. Walker and Ralph Ortega, at the conclusion of their respective matters. Accordingly, we deny the instant petition.

## I.

Two personal injury disputes join cause in the petition we reject here. One of those underlying matters stems from injuries Walker sustained when Michaels made a right-hand turn in her vehicle and collided with Walker while he rode his bike in the bike lane. The other entirely separate matter centers on the extent of Ortega's damages after Fritter rear-ended his vehicle at an intersection. Both accidents allegedly resulted in injuries, and so Walker sued Michaels, and Ortega sued Fritter. The cases both proceeded to this state's mandatory court-annexed arbitration program. And pursuant to the Nevada Arbitration Rules (NAR), Michaels and Fritter each served offers of judgment in their individual cases, which Walker and Ortega, respectively, rejected. Ultimately, the arbitrators in both Walker's and Ortega's cases found in their favor, awarding damages that substantially exceeded the amount that Michaels and Fritter had each previously offered.



Because Farmers Insurance insured both Michaels and Fritter, the same attorney, Adam McMillen, separately represented the interests of both defendants. Following the arbitrators' respective decisions, and in light of the hefty differences between the offers of judgment and ultimate awards, McMillen sought trials de novo in both cases. Relying on statistical information purporting to demonstrate the undue frequency of McMillen's requests for trials de novo as a general practice, Walker and Ortega alleged that McMillen had arbitrated in bad faith by using the requests to obstruct and delay. Accordingly, under the representation of the same attorney, Walker and Ortega filed nearly identical motions to strike McMillen's requests for trials de novo in their cases, based on NAR 22 (stating that "the failure of a party or an attorney to either prosecute or defend a case in good faith during the arbitration proceedings shall constitute a waiver of the right to a trial de novo").

The district court consolidated the separate motions to strike and held an evidentiary hearing on the question of McMillen's motivations and the applicability of NAR 22. Ultimately, the court found that the statistical evidence Walker and Ortega had presented was not sufficient to establish that McMillen had arbitrated in bad faith, rejecting their motions to strike. Walker and Ortega subsequently filed this petition, demanding that we reverse the district court's finding and compel it to strike McMillen's requests for trial de novo in each of their cases.

II.

Article 6, Section 4 of the Nevada Constitution grants this court authority "to issue writs of *mandamus, certiorari,* prohibition, *quo warranto* and *habeas corpus* and also all writs necessary or proper to the complete exercise of [its] jurisdiction." The traditional writ of mandamus is a remedy

Supreme Court
of
Nevada

(O) 1947A

distinguishable from all others listed therein, to the extent "it recognizes legal duty, and compels its performance where there is either no remedy at law or no adequate remedy." Thomas Carl Spelling, *A Treatise on Injunctions and Other Extraordinary Remedies* 1173 (2d ed. 1901). And while our original jurisdiction to issue this unique remedy resounds in our constitutional powers, the Legislature has also provided guidance for its appropriate administration. *See* NRS 34.160 (stating that the writ of mandamus may issue "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is unlawfully precluded by such inferior tribunal"). This language is consistent with well-established common law rules governing traditional mandamus jurisdiction, and we therefore "presume that . . . in prescribing mandamus as a statutory remedy, [the Legislature] had in view the nature and extent of the remedy, as known at the common law." Spelling, *supra*, at 1170.

Accordingly, under our constitutional authority, as directed and refined by statute and its corresponding common law,

> [t]he chief requisites of a petition to warrant the issuance of a [traditional] writ of mandamus are: (1) The petitioner must show a legal right to have the act done which is sought by the writ; (2) it must appear that the act which is to be enforced by the mandate is that which it is the plain legal duty of the respondent to perform, without discretion on his part either to do or refuse; (3) that the writ will be availing as a remedy, and that the petitioner has no other plain, speedy, and adequate remedy.

*Id.* at 1173; *see* NRS 34.160; *Segovia v. Eighth Judicial Dist. Court*, 133 Nev. 910, 911-12, 407 P.3d 783, 785 (2017) (holding that a writ of mandamus is available "to compel the performance of an act which the law

requires as a duty resulting from an office"). Particularly where, as here, this court is asked to direct its traditional powers of mandamus at a lower court or judicial officer, there is significant overlap between the first and second requirements. That is, the question of whether a petitioner has a legal right to any particular action by the lower court turns, in part, on whether the action at issue is one typically entrusted to that court's discretion, and whether that court has exercised its discretion appropriately. *See Martinez Guzman v. Second Judicial Dist. Court*, 136 Nev. 103, 106-07, 460 P.3d 443, 446 (2020); *see also* Spelling, *supra*, at 1230 (noting that "[i]n order to entitle a party to mandamus to compel action by the judge of an inferior court . . . it is incumbent upon him to show that it is clearly the duty of such judge to do the act sought to be coerced").

Where a district court *is* entrusted with discretion on an issue, the petitioner's burden to demonstrate a clear legal right to a particular course of action by that court is substantial; we can issue traditional mandamus only where the lower court has *manifestly* abused that discretion or acted arbitrarily or capriciously. *See Martinez Guzman*, 136 Nev. at 105, 460 P.3d at 446 (quoting *Redeker v. Eighth Judicial Dist. Court*, 122 Nev. 164, 167, 127 P.3d 520, 522 (2006)). That is, traditional mandamus relief does not lie where a discretionary lower court decision "result[s] from a mere error in judgment"; instead, mandamus is available only where "the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill will." *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 932, 267 P.3d 777, 780 (2011) (quoting *Blair v. Zoning Hearing Bd. of Twp. of Pike*, 676 A.2d 760, 761 (Pa. Commw. Ct. 1996)); *see also Segovia*, 133 Nev. at 912, 407 P.3d at 785 (holding that a writ of mandamus is

available "to control a manifest abuse or an arbitrary or capricious exercise of discretion"). Were we to issue traditional mandamus to "correct" any and every lower court decision, we would substitute our judgment for the district court's, subverting its "right to decide according to its own view of the facts and law of a case which is still pending before it" and ignoring that there would almost always be "an adequate remedy for any wrongs which may be done or errors which may be committed, by appeal or writ of error." Spelling, *supra*, at 1202.

This leads to the third, related requirement for traditional mandamus relief—namely, the absence of any alternative legal remedy. *See Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 224, 88 P.3d 840, 841 (2004). Because mandamus is an extraordinary remedy, this court does not typically employ it where ordinary means, already afforded by law, permit the correction of alleged errors. *See Rawson v. Ninth Judicial Dist. Court*, 133 Nev. 309, 316, 396 P.3d 842, 847 (2017). And by limiting our interference with ordinary district court decisions, we thereby circumvent the "inconvenience and confusion which would result from allowing litigants to resort to the appellate courts for correction of errors in advance of opportunity on the part of the lower court to correct its errors before final judgment and upon motion for new trial." Spelling, *supra*, at 1203. Moreover, to the extent that appellate relief is available at the conclusion of a matter, it would typically be preferable to an extraordinary writ proceeding because we can issue a decision after "review[ing] the entire record in the regular way, when [we] can enjoy the advantage of having the whole case before us." *Id.* at 1203-04. In light of these considerations, "[t]his court has previously pointed out, on several occasions, that the right

SUPREME COURT
OF
NEVADA

(O) 1947A

to appeal is generally an adequate legal remedy that precludes [mandamus] relief." *Pan*, 120 Nev. at 224, 88 P.3d at 841.

Petitioners fail to demonstrate any of the prerequisites for traditional writ relief to the circumstances at hand. With regard to the first requirement—that is, that petitioners "show that it is clearly the duty of [the district court judge] to do the act sought to be coerced," *Spelling*, *supra*, at 1203—petitioners rely extensively on *Gittings v. Hartz*, 116 Nev. 386, 996 P.2d 898 (2000), for the proposition that the frequency of McMillen's requests for trials de novo plainly establishes his bad-faith participation in arbitration here, as a matter of law. But this ignores that, far from establishing a clear legal right to the relief that petitioners demand, in *Gittings* this court actually rejected on the facts the argument petitioners raise. 116 Nev. at 394, 996 P.2d at 903. And, while *Gittings* observed that "statistical information that demonstrates that an insurance company has routinely filed trial de novo requests without regard to the facts and circumstances of each individual case *may be used to support* a claim of bad faith," it did not obligate a district court to credit statistical evidence it determined was incomplete and insufficient to establish bad faith. *Id.* (emphasis added). Indeed, and entirely contrary to petitioners' position, if the district court had stricken McMillen's requests for trials de novo in the absence of a clearly established factual and legal basis to do so, real parties in interest may have had a more supportable claim of legal right than petitioners, given that, in the absence of bad-faith arbitration practices under NAR 22, they would enjoy a constitutionally established right to the jury trials requested. Nev. Const. art. 1, § 3.

As to the second consideration, petitioners fail to analyze it under the proper standard, arguing that the district court merely "abused

SUPREME COURT
OF
NEVADA

(O) 1947A

7

its discretion by substituting its own misunderstanding of statistics for the uncontested expert opinion of a Doctor of Economics." But the question of counsel's bad faith is one of fact, left to the district court's discretion, *see Williams v. Williams*, 120 Nev. 559, 565, 97 P.3d 1124, 1128 (2004) (determining that the good faith of a party was a question of fact); *NOLM, LLC v. County of Clark*, 120 Nev. 736, 739, 100 P.3d 658, 660 (2004) (stating that this court leaves findings of facts to the discretion of the district court), and as indicated, our mandamus relief is not available to correct a mere abuse of that discretion. *See Martinez Guzman*, 136 Nev. at 105, 460 P.3d at 446 (holding that mandamus is available only where a district court *manifestly* abused its discretion); *Armstrong*, 127 Nev. at 932, 267 P.3d at 780 (quoting *Blair*, 676 A.2d at 761) (noting that mandamus is available to correct decisions based entirely on improper reasons). Moreover, nothing in the record supports that the district court's refusal to grant their motions to strike amounted to the sort of overtly erroneous conduct that would make our traditional extraordinary relief available, particularly because *Gittings*, the case upon which petitioners hang their demands, does not clearly require the relief requested in the first instance.

Put in terms of the standards recited above, petitioners have neither identified their legal right to have the requests for trials de novo stricken, nor demonstrated that it was the district court's plain legal duty to have done so. Instead, the petition demands that this court review a discretionary "order or judgment of the court below, adjudge it to be erroneous [and] set it aside," *State v. Wright*, 4 Nev. 119, 123 (1868), based on a post-hoc expansion of our precedent. But this would "simply . . . convert the writ of mandamus into a writ of error," *id.*, which it is not.

SUPREME COURT
OF
NEVADA

(O) 1947A

The request for our interlocutory review here likewise fails under the third requirement for traditional mandamus relief because, as petitioners themselves acknowledge, there is an obviously adequate, sufficiently speedy remedy available at law—that is, petitioners may appeal when their cases resolve. *See Pan*, 120 Nev. at 224, 88 P.3d at 841 (noting that "[t]his court has previously pointed out, on several occasions, that the right to appeal is generally an adequate legal remedy that precludes writ relief"). It may be that, as petitioners emphasize, our grant of mandamus would "give an easier or more expeditious remedy" than that particular course of action, but this is not the standard. *Washoe County v. City of Reno*, 77 Nev. 152, 156, 360 P.2d 602, 603 (1961) (citing *Steves v. Robic*, 31 A.2d 797 (Me. 1943)). "A remedy does not fail to be speedy and adequate, because, by pursuing it through the ordinary course of law, more time probably would be consumed than in a mandamus proceeding." *Washoe County*, 77 Nev. at 156, 360 P.2d at 603; *see also Pan*, 120 Nev. at 225, 88 P.3d at 841 (stating that "even if an appeal is not immediately available because the challenged order is interlocutory in nature, the fact that the order may ultimately be challenged on appeal from the final judgment generally precludes writ relief").

Petitioners hypothesize that appellate relief might be unavailing should "each injured Plaintiff's judgment after trial de novo [be] equal to or greater than the arbitration awards." But this argument—that the outcome of their trials de novo might leave them in a *better* position—only emphasizes the absence of any impending irreparable harm that might otherwise weigh in favor of our granting traditional mandamus. *See NAD, Inc. v. Eighth Judicial Dist. Court*, 115 Nev. 71, 78, 976 P.2d 994, 998 (1999). In any case, "our concern is with the existence of a remedy and not

SUPREME COURT
OF
NEVADA

(O) 1947A

9

whether it will be unproductive in [any] particular case." *Washoe County*, 77 Nev. at 156, 360 P.2d at 604. Petitioners have failed to demonstrate a basis for us to grant a traditional writ of mandamus.

III.

This court has alternatively granted mandamus relief where a petitioner presented "legal issues of statewide importance requiring clarification, and our decision . . . promote[d] judicial economy and administration by assisting other jurists, parties, and lawyers." *MDC Rests., LLC v. Eighth Judicial Dist. Court*, 134 Nev. 315, 319, 419 P.3d 148, 152 (2018); *see also Archon Corp. v. Eighth Judicial Dist. Court*, 133 Nev. 816, 820, 407 P.3d 702, 706 (2017). This is an expansion of the common law doctrine and statutory procedural authorization discussed above, and we therefore take seriously the judicial limitations placed upon this so-called "advisory" mandamus—to do otherwise would be "virtually to nullify the final decision rule and to allow interlocutory review by mandamus freely in [our] own discretion." Harvard Law Review Association, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv. L. Rev. 595, 596, 608 (1973) (collecting cases and discussing expansion); *see Archon*, 133 Nev. at 820, 407 P.3d at 707 (noting that advisory mandamus "risks being misused in ways that subvert the final judgment rule"). Petitioners do not acknowledge the strict limits on "advisory" mandamus—not referring to it except to state in their reply that "this writ presents an important procedural question of statewide importance to all practitioners and litigants."

This matter does not qualify for advisory mandamus. The dispute in district court was factual, not legal, and sufficient evidence supports the district court's factual finding of no bad faith. *See Williams*,

120 Nev. at 565, 97 P.3d at 1128. But even crediting for the sake of argument the petitioners' position that the district judge should have found otherwise, this disagreement does not present a serious issue of substantial public policy or involve important precedential questions of statewide interest as required for advisory mandamus. *See Poulos v. Eighth Judicial Dist. Court*, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982).

Nor are we persuaded that our review of the factual question in this case would promote judicial economy. *See MDC Rests.*, 134 Nev. at 319, 419 P.3d at 152. To the contrary, the orderly administration of justice by the lower courts of this state requires that we allow them the province of their authority. Indeed, "if the duty of superintending and reviewing the action and proceedings of inferior courts were thrown upon appellate courts otherwise than by the regular course of appeal or writ of error," it would destroy the possibility of such administration—hindering fact-finding by the judicial body best poised to do so and unnecessarily limiting the records for this court's appellate review. Spelling, *supra*, at 1202. We are particularly inclined to leave the fact-based decision underlying this petition to the ordinary course of case administration, since the arbitration program it involves is specifically intended to be "a simplified, informal procedure to resolve certain types of civil cases." *Gittings*, 116 Nev. at 393, 996 P.2d at 902; *see also* NAR 2(A) and (D). Routinely accepting interlocutory challenges to factual determinations in these actions would only add a new layer to that intentionally streamlined program, potentially encouraging its use by prospective parties as the very method of delay and obstruction petitioners decry here. *Gittings*, 116 Nev. at 394, 996 P.2d at 903 (noting accusation that insurer was using the arbitration process to delay).

Finally, "advisory" mandamus is appropriate only where it will clarify a "substantial issue of public policy or precedential value." *Poulos*, 98 Nev. at 455-56, 652 P.2d at 1178. And petitioners have not cogently argued for the broader importance of the seemingly singular, fact-based issue they ask us to resolve. Indeed, save a summary reference to the goals of the state's alternative dispute resolution program, petitioners do not offer context for their petition supporting or suggesting that it would resolve any issue beyond their individual disagreements with the district court's findings as to this particular legal practitioner. And, as noted, in our view the goals of the program are better served by our denial of writ relief in this case. Accordingly, because petitioners have not offered any cogent, compelling reason for this court to issue an "advisory" mandamus, we deny their petition for a writ of mandamus and lift the stays imposed on the underlying proceedings in district court.

_____ *Pickering* _____, C.J.
Pickering

We concur:

_____ *Hardesty* _____, J.
Hardesty

_____ *Stiglich* _____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A