TRANSAERO LAND & DEVELOPMENT CO. FKA TRANSAMERICA LAND & DEVELOPMENT CO., A NEVADA CORPORATION, APPELLANT/CROSS-RESPONDENT, v. LAND TITLE OF NEVADA, INC., A NEVADA CORPORATION, RESPONDENT/CROSS-APPELLANT.

No. 22176

December 3, 1992         842 P.2d 716

[Rehearing denied March 19, 1993]

*Greenman, Goldberg, Raby & Martinez,* Las Vegas, for Appellant/Cross-Respondent.

*Richard McKnight,* Las Vegas, for Respondent/Cross-Appellant.

## OPINION

*Per Curiam:*

### FACTS

On November 1, 1977, Charles Stewart conveyed title to 40 acres of undeveloped land located in Clark County, Nevada, to Richard Gross. The legal description attached to the deed included a 100-foot-wide easement in favor of Stewart burdening 2.39 acres of the 40-acre parcel.[1] This 40-acre parcel was divided into eight smaller parcels, numbered 1 through 8. On February 10, 1978, Gross conveyed the 40-acre parcel to Ulrich Rasch acting as trustee for a group consisting of Rasch, Arnaldo Kuestermann and Louis Arriza (Rasch Group). As trustee, Rasch was given the power to do "all acts necessary" relating to the property.

Rasch and respondent Land Title of Nevada, Inc. (Land Title) executed a trust agreement on January 3, 1983, which authorized Land Title to act as trustee for the Rasch Group and required Land Title to comply with any written instructions submitted by Rasch. Rasch conveyed the 40-acre parcel to Land Title on June 22, 1983.

On January 31, 1984, Land Title, as trustee for the Rasch Group, conveyed the 40-acre parcel to appellant, Transaero Land & Development Co. fka Transamerica Land & Development Co. (Transamerica). The land was sold to Transamerica at $20,000 per acre, for a total purchase price of $800,000. Transamerica paid $200,000 down at the close of escrow and secured the remaining balance by executing a note and first deed of trust on

---

[1]Although the district court found that the entire parcel of land, which was ultimately conveyed to Transamerica, consisted of 40 acres, the record also reflects a total of only 38.98 acres in the parcel. For convenience, we will hereafter refer to the land as a 40-acre parcel since the disparity is of no relevance to the disposition of this appeal. The source of controversy between the parties relates solely to the 2.39 acres burdened by the 100-foot-wide easement.

the property, the terms of which obligated Transamerica to make four annual principal payments of $150,000 each together with interest at ten percent per annum. Each annual installment was due on the 1st day of February, commencing on February 1, 1985.

Jim Ward, president of Land Title, agreed in writing that Land Title would release from the deed of trust parcels 1 and 2 when Transamerica made the $200,000 down payment, parcels 3, 4 and 5, respectively, upon each of Transamerica's first three installment payments due under the note, and parcels 6, 7 and 8 when Transamerica made the final payment on the note. In addition, Land Title was required to reconvey the deed of trust upon receipt of the final payment.

Transamerica paid the first two installments of $150,000 plus interest on February 12, 1985 and March 12, 1986, respectively. Because Stewart purportedly retained an ownership interest in 2.39 acres of the 40-acre parcel, Eugene Buckley, as president of Transamerica, and Ulrich Rasch, as trustee, executed an agreement on April 10, 1987, which provided that Rasch would either acquire and convey Stewart's interest to Transamerica within 120 days of the agreement or reduce the principal amount of the note by $40,000. Accordingly, the agreement provided that Transamerica's third installment be provisionally reduced to $110,000 plus interest, which Transamerica paid on May 8, 1987. The agreement further provided that if Rasch conveyed the 2.39 acres to Transamerica within 120 days of the date of the agreement, then the $40,000 obligation would be restored to the note and would be payable in February of 1988. Finally, the agreement provided that if either party found it necessary to enforce the terms of the agreement, the prevailing party was entitled to attorney's fees and costs. Rasch failed to acquire or quiet title to the 2.39 acres and secure them to Transamerica within 120 days.

The final payment of $150,000 plus interest was due February 1, 1988. On February 17, 1988, Land Title filed a notice of breach and election to sell the entire 40-acre parcel. Shortly thereafter, Buckley, on behalf of Transamerica, attempted to make the February 1, 1988 payment of $150,000 plus interest, but Land Title refused to accept the payment, asserting that Transamerica was obligated to pay $190,000 plus interest.

On June 8, 1988, Transamerica filed a complaint which was shortly thereafter amended, seeking a temporary restraining order, a permanent injunction, declaratory relief, and punitive damages. Specifically, Transamerica requested that the court issue an injunction enjoining Land Title from conducting a trustee's sale. In addition, Transamerica requested that the court declare that the deed of trust no longer encumbered parcels 1

through 5, and that the amount owed under the note and deed of trust is $150,000 plus interest, rather than the $190,000 claimed by Land Title. Finally, Transamerica sought punitive damages based on Land Title's alleged malicious publication of a notice of sale which misstated the principal amount owed on the note and improperly included parcels 1 through 5 as being encumbered by the note. On June 9, 1988, the district court issued a temporary restraining order.

Following a bench trial, the district court entered judgment in favor of Transamerica and confirmed a prior order requiring Land Title to convey the entire 40-acre parcel to Transamerica.[2] In addition, the court entered judgment in favor of Land Title for $40,000 plus ten percent interest. The $40,000 award resulted from the successful efforts of Land Title to quiet title to the 2.39 acres despite the fact that Land Title failed to do so within the 120 days specified by the parties. Finally, the court awarded Transamerica attorney's fees and costs in the amount of $33,251.81.

On appeal, Transamerica argues that the district court erred in ordering Transamerica to pay $40,000 plus interest to Land Title. Transamerica further contends that the district court erred in failing to award Transamerica punitive damages after finding that Land Title maliciously slandered Transamerica's title to the 40-acre parcel. On cross-appeal, Land Title argues that the district court erred in finding that Transamerica tendered the $150,000 final payment on February 18, 1988. Finally, Land Title argues that the district court erred in awarding attorney's fees and costs to Transamerica.

## DISCUSSION

Transamerica contends that the district court erred in ordering it to pay $40,000 plus interest to Land Title. Although the district court found that the April 10, 1987 agreement was valid and binding, Land Title did not clear title to the 2.39 acres until May 11, 1988, rather than August 8, 1987, as required by the agreement. Nevertheless, reasoning that Transamerica was not entitled to both clear title to the disputed property and a $40,000 reduction in the purchase price, the district court concluded that to uphold the 120-day time provision in the parties' agreement would result in an unintended "windfall" to Transamerica. Thus, the district court exercised its equitable powers to reform the contract to reflect what the court concluded was the actual intent of the parties, and to prevent what the court apparently concluded

---

[2]The district court also stated in its conclusions of law that Land Title had, in fact, conveyed the full 40 acres to Transamerica.

would amount to unjust enrichment. Consequently, the court disregarded the agreement's 120-day time provision and ordered Transamerica to pay $40,000 plus interest to Land Title.

We conclude that the district court erred in reforming the agreement and in relieving Land Title from the 120-day time provision. It is well settled that "[i]n seeking equity, a party is required to do equity." Overhead Door Co. v. Overhead Door Corp., 103 Nev. 126, 127, 734 P.2d 1233, 1235 (1987). In the instant case, Land Title delayed filing a quiet title action to clear the title to the 2.39 acre parcel clouded by Stewart's claim of interest until February 22, 1988. Consequently, the cloud on the title was not removed by the quiet title action until May 11, 1988, over a year after the April 10, 1987 agreement was executed. During this lengthy time period, Transamerica was unable to convey clear title to the entire property. In addition, Land Title failed to release parcels 1 through 5 after receiving the requisite payments from Transamerica, and instead filed a notice of breach and election to sell that included those parcels, thus slandering Transamerica's title. Land Title's actions preclude equitable intervention on Land Title's behalf.

We therefore conclude that the 120-day provision in the April 10, 1987 agreement was valid and enforceable, that Land Title failed to meet its obligations under the time provision, and that the district court erred in disregarding the time limitation. *See* Watson v. Watson, 95 Nev. 495, 496, 596 P.2d 507, 508 (1979) (courts are bound by language which is clear and cannot distort the plain meaning of an agreement). Accordingly, we reverse the judgment awarding Land Title $40,000 plus interest.

Transamerica further contends that the district court erred in failing to award Transamerica punitive damages after finding that Land Title maliciously slandered Transamerica's title to the 40-acre parcel. A plaintiff is never entitled to punitive damages as a matter of right. Ainsworth v. Combined Ins. Co. of America, 105 Nev. 237, 244, 774 P.2d 1003, 1009, *cert. denied,* Combined Ins. Co. of America v. Ainsworth, 493 U.S. 958 (1989). Having thoroughly reviewed the record on this matter, we conclude that the district court did not abuse its discretion by declining to award Transamerica punitive damages.

On cross-appeal, Land Title argues that the district court erred in finding that Transamerica tendered the $150,000 final payment on February 18, 1988. Transamerica argues that it made a valid tender in February of 1988 and that its tender stopped the running of interest. Where both parties are under a duty to perform

concurrently, a valid tender is made if one party is ready, willing and able to perform and gives notice to the other party of his readiness. *See* Loveless v. Diehl, 364 S.W.2d 317, 321 (Ark. 1963); Ford Motor Credit Co. v. Goings, 527 P.2d 603, 607 (Okl.Ct.App. 1974).

In the instant case, Land Title was obligated to reconvey the deed of trust upon Transamerica's tender of the final payment on the note. Consequently, Transamerica's tender of the $150,000 payment plus interest, coupled with Land Title's refusal of the tender and counter-demand for $190,000 in February of 1988, stopped the running of interest. *See* Arley v. Liberty Mut. Fire Ins., 81 Nev. 411, 414, 404 P.2d 426, 428 (1965).

We also conclude that the district court properly awarded attorney's fees to Transamerica because of the provision in the April 10, 1987 agreement that expressly provided for attorney's fees and costs to the prevailing party. *See* Sanchez v. Alonso, 96 Nev. 663, 669, 615 P.2d 934, 938 (1980).

## CONCLUSION

We have carefully considered the remaining contentions of the parties and find them to be without merit. For the reasons stated above, we reverse the district court's award of $40,000 plus interest to Land Title, we affirm the judgment of the district court with respect to attorney's fees and punitive damages, and we remand this matter to the district court for additional proceedings consistent with the views expressed herein.