OPINION
 

 Per Curiam:
 

 The issue in this appeal is whether a deed may be reformed in favor of a unilaterally mistaken party who bears the risk of the mistake, when the opposing party was aware of the mistake and sought to use it against the mistaken party. Because we conclude that these circumstances warrant reformation, we affirm the district court’s reformation order, but we remand for a partial refund to the non-mistaken party.
 

 FACTS
 

 After constructing five lanes of roadway as part of the Desert Inn Arterial across a portion of real property, Clark County sought to sell the remnant portions of two parcels at public auction. The County advertised the property for sale but failed to provide a new legal description of the land. Hence, the legal description of the two parcels to be sold was the same as when the County had acquired them and reflected two parcels totaling 0.92 acre, rather than the parcels totaling 0.49 acre that the County intended to sell. Neil Ohriner, the sole owner of appellant NOLM, LLC, examined the property and realized that the legal description was incorrect. He then submitted a winning bid of $340,000 at the public auction. The Grant, Bargain and Sale Deed delivered to escrow described the property as the two whole parcels, totaling 0.92 acre, rather than the two remnant parcels, totaling 0.49 acre. Ohriner transferred the deed to NOLM after escrow closed.
 
 [1]
 

 After the sale, the County taxed Ohriner $1,050,480 on one parcel and $81,310 on the adjoining parcel. The taxes were assessed on the entire parcels, not just the remnants. Ohriner brought the
 
 *739
 
 issue of the widely disparate tax amounts to the County’s attention. After the error was discovered, the County gave Ohriner two options: he could either voluntarily reform the deed to describe the remnant pieces or he could rescind the contract for the full purchase price plus taxes. Ohriner rejected both options. Instead, Ohriner filed a complaint against the County, alleging claims for trespass, inverse condemnation and private nuisance. The County counterclaimed, seeking reformation of the deed or rescission of the contract, plus attorney fees and costs.
 

 The record reveals that although Ohriner knew before purchasing the property that the legal description was wrong, he intended to take advantage of the County’s error by using it as a “bargaining chip” if the County opposed his application for an adult use permit on the property. In fact, Ohriner alerted the County to its mistake when he encountered parking space problems for his intended use of the property.
 

 The district court ordered Ohriner to reform the contract to reflect the property that the County had intended to sell. Ohriner filed a motion for reconsideration and clarification, arguing that, if reformation were appropriate, then the purchase price and property taxes should have been abated. The district court denied the motion for reconsideration. Ohriner now appeals.
 

 This court reviews the district court’s findings of fact for an abuse of discretion, and this court will not set aside those findings “unless they are clearly erroneous or not supported by substantial evidence.”
 
 [2]
 
 However, this court reviews the construction of a contract de novo.
 
 [3]
 

 Ohriner first argues that the land sale agreement unambiguously conveyed parcels totaling 0.92 acre in size to him, and, because the contract is clear, the district court should have enforced the contract language.
 
 [4]
 
 Ohriner next argues that because the district court expressly found that Clark County bore the risk of its mistake, the district court erred as a matter of law by ordering reformation of the deed. According to Ohriner, the district court’s reformation contravenes this court’s opinion in
 
 Home Savers v. United Security Co.,
 

 [5]
 

 in which we adopted the unilateral mistake rule, as set forth in section 153 of the
 
 Restatement (Second) of Contracts.
 

 
 *740
 
 The parties do not dispute that Clark County was unilaterally mistaken as to the description of the property being sold, that the risk of mistake fell on the County and that Ohriner knew about the County’s mistake. The issue, then, is whether the district court erred by ordering reformation of the agreement when there was a unilateral mistake, when the County bore the risk of this mistake and when Ohriner knew about the mistake but failed to disclose it to the County.
 

 Section 166 of the
 
 Restatement
 
 provides that:
 

 If a party’s manifestation of assent is induced by the other party’s fraudulent misrepresentation as to the contents or effect of a writing evidencing or embodying in whole or in part an agreement, the court at the request of the recipient may reform the writing to express the terms of the agreement as asserted,
 

 (a) if the recipient was justified in relying on the misrepresentation, and
 

 (b) except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.
 
 [6]
 

 The commentary to
 
 Restatement
 
 section 166 clarifies that the rule also applies when one party is mistaken and the other party, aware of the mistake, remains silent, because his silence “is equivalent to an assertion that the writing is as the other understands it to be.”
 
 [7]
 

 Furthermore, section 161 of the
 
 Restatement
 
 provides that a party’s silence regarding a fact is tantamount to a declaration that the fact does not exist:
 

 (b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.
 

 (c) where he knows that disclosure of the fact would correct a mistake of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part.
 
 [8]
 

 Most of the western states are in accord with these rules and allow for reformation of an instrument where one party makes a unilateral mistake and the other party knew about it but failed to bring it to the mistaken party’s attention.
 
 [9]
 
 For example, in
 
 Kish
 
 v.
 
 *741
 

 Kustura,
 
 an Oregon case, the parties contracted for the sale of real property.
 
 [10]
 
 The initial agreement was formalized in a letter, but the contract terms differed from the letter. The appellant knew that the contract terms were different, knew that the other party could not read or speak English and knew that the other party trusted and relied on her representations as to the contents of the contract. The appellate court determined that the trial court did not err in reforming the contract to reflect the parties’ agreement as embodied in the letter because the respondent had proven by clear and convincing evidence that an agreement antecedent to the written contract existed, that appellant’s conduct was inequitable and that the other contracting party’s mistake was not the result of gross negligence.
 
 [11]
 

 While Oregon case law requires, for contract reformation, the existence of an antecedent agreement which is not later reflected in the actual contract, this requirement is not fatal to reformation under the circumstances presented in the case at bar. The record reveals that, although the County and Ohriner had no prior agreement to sell only the remnant parcels at the auction, the County thought that it was selling the remnant parcels, not the whole parcels. Ohriner admitted that he knew of the County’s error and remained silent because he hoped to take advantage of the error. His conduct was inequitable and sufficiently analogous to the conduct in
 
 Kish
 
 to allow for contract reformation.
 
 [12]
 
 Furthermore, under the Oregon criterion that the mistaken party cannot have committed gross negligence, the County was not grossly negligent in its mistake because the sale was the result of multiple County departments attempting to coordinate their respective duties, the
 
 *742
 
 County departments were in a period of flux and the sale of the remnant parcels was assigned to a division that had never before conducted such sales. Miscommunication between departments is not gross negligence.
 
 [13]
 

 In
 
 Belk v. Martin,
 
 an Idaho case very similar to the case at hand, the Idaho Supreme Court upheld the trial court’s decision to reform a lease agreement so that it reflected the parties’ agreed-upon rent of $14,768.00, rather than the amount of $1,476.80 as written in the lease.
 
 [14]
 
 The court held that, since the respondents had made a typographical error in the lease and the appellant had known about the error but failed to alert the respondents to it, reformation of the lease was appropriate.
 
 [15]
 

 Like the situation in
 
 Belk,
 
 in which the respondents intended to lease the land for ten times more than was reflected in the written instrument, the County in this case intended to sell only remnant parcels, not the entire parcels. Ohriner knew about the misdescription and failed to bring it to the County’s attention; his conduct was like the
 
 Belk
 
 appellant’s silence. And, as in
 
 Belk,
 
 this nondisclosure of a material mistake amounted to inequitable conduct.
 

 Given our own case law, the
 
 Restatement (Second) of Contracts,
 
 and the trend among other western states to allow reformation, the district court did not err in reforming the contract between Ohriner and the County to describe the remnant parcels based on the County’s unilateral mistake.
 
 [16]
 

 Ohriner also argues that the district court erred by reforming the contract because judicial estoppel precluded the County from seeking reformation or rescission. Ohriner contends that, since his purchase of the parcels, the County has recognized Ohriner as owner of the entire parcels by taxing him on the entire parcels.
 

 
 *743
 
 Whether judicial estoppel applies is a question of law
 
 [17]
 
 subject to de novo review. The primary purpose of judicial estoppel is to protect the judiciary’s integrity,
 
 [18]
 
 and a court may invoke the doctrine at its discretion.
 
 [19]
 
 However, judicial estoppel should be applied only when “a party’s inconsistent position [arises] from intentional wrongdoing or an attempt to obtain an unfair advantage.”
 
 [20]
 
 Judicial estoppel does not preclude changes in position that are not intended to sabotage the judicial process.
 
 [21]
 

 [T]he doctrine generally applies “when ‘ “(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.” ’ ”
 
 [22]
 

 Here, the judicial estoppel doctrine does not even apply, as the County never asserted a contrary position in a prior judicial or quasi-judicial proceeding. Furthermore, although the County taxed Ohriner on the entire parcels even though it had only intended to convey remnant parcels, the taxation was in accordance with the legal conveyance. The County does not dispute that a legal conveyance of the entire parcels occurred; rather, it contends that it merely intended to sell the remnant pieces and that Ohriner knew of the County’s intent when he purchased the property. The County’s taxation of the entire parcels does not judicially estop the County from seeking reformation or rescission based on its intent to sell only the remnants.
 

 Nevertheless, “ ‘[i]n seeking equity, a party is required to do equity.’ ”
 
 [23]
 
 By asking the district court to invoke its equitable powers,
 
 *744
 
 the County should also be required “to do equity” by refunding the portions of the tax payments corresponding to the portions of the parcels that the County had intended to retain. The tax bills were substantial in light of the improvements on the parcels. Because Ohriner did not and will not benefit from the use of the entire parcels, he should not be required to pay substantially larger tax bills due to the County’s improvements on the entire parcels. Therefore, we conclude that Ohriner is entitled to a partial refund of his property taxes.
 

 Ohriner further argues that, if the district court properly reformed the contract, then the district court erred by failing to reform the purchase price. Ohriner contends that he should be compensated for the 0.43 acre portion of the parcels that he was ordered to re-deed to the County because, otherwise, the order would constitute an unconstitutional taking for a public use without just compensation. Ohriner also argues that the adult use permit that the County issued for the entire 0.92 acre parcels should be reinstated, as the evidence at trial established that the permit was for the 0.49 acre parcels remaining after Ohriner re-deeded the rest to the County.
 

 With regard to the sale price, we conclude that Ohriner’s argument lacks merit. The record reveals that, at the auction, the property was appraised at $190,000. Ohriner did not even join the bidding until the $216,000 level. When everyone else had stopped bidding, Ohriner and Perry Miscelli continued to bid against each other. Miscelli’s last bid was for $335,000. Ohriner purchased the property with a final bid of $340,000. The evidence showed that Miscelli was the agent of an adjoining landowner to the parcels, that he knew that he was bidding for the remnant parcels only and that his principal was prepared to pay up to $335,000 for the adjoining remnant parcels. Given that at least one other bidder was willing to pay for the remnant parcels the approximate value that Ohriner paid, and given that Ohriner intended to use the County’s mistake as a “bargaining chip” in obtaining an adult use permit, we conclude that the district court did not err by refusing to reduce Ohriner’s purchase price.
 

 As to Ohriner’s takings argument, we conclude that it lacks merit because the County neither condemned his property, nor acted to diminish his property’s worth; rather, the contract was reformed to reflect what the County actually intended to sell and what Ohriner intended to purchase.
 

 Finally, regarding the reinstatement of the adult use permit, Ohriner did not bring this issue to the district court’s attention until
 
 *745
 
 his motion for reconsideration, which the district court denied. We note that no appeal lies from an order denying reconsideration, and therefore, we do not consider Ohriner’s argument.
 
 [24]
 

 Accordingly, we affirm the district court’s order reforming the land sale contract and remand this matter with instructions that the district court amend the order to include a partial property tax refund to Ohriner.
 

 [1]
 

 Although NOLM is technically the appellant, we refer to Ohriner as the appellant in this opinion.
 

 [2]
 

 Sandy Valley Assocs.
 
 v.
 
 Sky Ranch Estates,
 
 117 Nev. 948, 954, 35 P.3d 964, 968 (2001).
 

 [3]
 

 Farmers Ins. Exch.
 
 v.
 
 Neal,
 
 119 Nev. 62, 64, 64 P.3d 472, 473 (2003).
 

 [4]
 

 Ellison
 
 v.
 
 C.S.A.A.,
 
 106 Nev. 601, 603, 797 P.2d 975, 977 (1990) (“It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written.”).
 

 [5]
 

 103 Nev. 357, 358-59, 741 P.2d 1355, 1356-57 (1987).
 

 [6]
 

 Restatement (Second) of Contracts
 
 § 166 (1981).
 

 [7]
 

 Id.
 
 § 166, cmt. a.
 

 [8]
 

 Id.
 
 § 161.
 

 [9]
 

 See, e.g., Belk v. Martin,
 
 39 P.3d 592, 599 (Idaho 2001) (holding that, where the respondents had made a typographical error in the lease and the ap
 
 *741
 
 pellant had known about the error but failed to alert the respondents to it, reformation of the lease was appropriate);
 
 Jones v. Reliable Sec. Incorporation, Inc.,
 
 28 P.3d 1051, 1062 (Kan. Ct. App. 2001) (“[A] written instrument may be reformed where there is ignorance or mistake on one side and fraud or inequitable conduct on the other; this can occur where one party to an instrument has made a mistake and the other knows it and fails to inform him or her of the mistake or conceals the truth from him or her.”);
 
 Oftedal v. State ex rel. Transp. Com’n,
 
 40 P.3d 349, 352, 359 (Mont. 2002) (allowing reformation of a contract where a contractor had underbid by such a large amount that the other party was on notice of the mistaken bid);
 
 Diamond v. Granite Falls School Dist.,
 
 70 P.3d 966, 971 (Wash. Ct. App. 2003) (holding that, where the school district knew of appellant’s mistake when the parties entered into a contract, the trial court should have relieved appellant from its unilateral mistake).
 

 [10]
 

 79 P.3d 337, 339 (Or. Ct. App. 2003).
 

 [11]
 

 Id.
 
 at 341.
 

 [12]
 

 Id.
 
 at 340 (stating that “[Unequitable conduct includes a party’s silence where that ‘party knows that the other party is materially mistaken as to a writing’s scope and effect, but remains silent, hoping to take advantage of the other’s mistake’” (quoting
 
 Pioneer Resources v. D.R. Johnson Lumber,
 
 68 P.3d 233, 253 (Or. Ct. App. 2003))).
 

 [13]
 

 Oftedal,
 
 40 P.3d at 359 (noting that mere negligence, such as inadvertence, would not preclude a mistaken party from obtaining equitable relief from the contract terms).
 

 [14]
 

 39 P.3d at 596, 599;
 
 see also Diamond,
 
 70 P.3d at 971 (concluding that, because the school district knew of appellant’s unilateral mistake, the trial court should have relieved appellant from his mistake).
 

 [15]
 

 Belk,
 
 39 P.3d at 599;
 
 see also Andres v. Claassen,
 
 714 P.2d 963 , 969-70 (Kan. 1986) (upholding the district court’s reformation of a contract for the sale of real property, where the buyer inserted a clause that included the seller’s reversionary interest in forty-four acres, which the seller did not intend to sell, without explaining the effect of the clause to the seller, because “a written instrument may be reformed where there is ignorance or a mistake on one side and fraud or inequitable conduct on the other”).
 

 [16]
 

 We further conclude that the contract reformation did not violate the parties’ freedom to contract, as Ohriner knew what the County intended to sell; Ohriner, in turn, intended to take advantage of the County’s mistake.
 

 [17]
 

 Kitty-Anne Music Co.
 
 v.
 
 Swan,
 
 4 Cal. Rptr. 3d 796, 800 (Ct. App. 2003).
 

 [18]
 

 Drain v. Betz Laboratories, Inc.,
 
 81 Cal. Rptr. 2d 864, 867 (Ct. App. 1999).
 

 [19]
 

 New Hampshire
 
 v.
 
 Maine,
 
 532 U.S. 742, 750 (2001).
 

 [20]
 

 Kitty-Anne Music, 4
 
 Cal. Rptr. 3d at 800.
 

 [21]
 

 See U.S.
 
 v.
 
 Real Property Located at Incline Village,
 
 976 F. Supp. 1327, 1340 (D. Nev. 1997).
 

 [22]
 

 Furia
 
 v.
 
 Helm, 4
 
 Cal. Rptr. 3d 357, 368 (Ct. App. 2003) (quoting
 
 Thomas v. Gordon,
 
 102 Cal. Rptr. 2d 28, 32 (Ct. App. 2000) (quoting
 
 Drain,
 
 81 Cal. Rptr. 2d at 868 (quoting
 
 Jackson v. County of Los Angeles,
 
 70 Cal. Rptr. 2d 96, 103 (Ct. App. 1997)))).
 

 [23]
 

 Transaero Land & Dev.
 
 v.
 
 Land Title,
 
 108 Nev. 997, 1001, 842 P.2d 716, 718 (1992) (alteration in original) (quoting
 
 Overhead Door Co. v. Overhead Door Corp.,
 
 103 Nev. 126, 127, 734 P.2d 1233, 1235 (1987)).
 

 [24]
 

 Alvis
 
 v.
 
 State, Gaming Control Bd.,
 
 99 Nev. 184, 660 P.2d 980 (1983).