ARMSTRONG, P.J.
*316 *524 This appeal arises from general and supplemental judgments filed in two consolidated cases concerning the nonjudicial foreclosure of a trust deed. Following the foreclosure, Troubled Asset Solutions (TAS), which was both the trustee and the successful bidder at the sale, filed an action for forcible entry and detainer to evict Wilcher from his residence. In a separate action, Wilcher brought suit to quiet title to the property in his name and sought a declaration from the trial court that TAS had no interest in the property; his claims were based on the undisputed fact that the trust deed named only Sierra Development, LLC, (Sierra) as grantor notwithstanding that it was Wilcher, and not Sierra, that owned the property when the trust deed was executed. In response, TAS filed a counterclaim seeking to reform the deed of trust to add Wilcher, in his individual capacity, as a grantor. The cases were consolidated for trial, after which the court granted TAS's claim for reformation of the deed of trust and granted restitution of the property to TAS, thereby rejecting Wilcher's claim to quiet title to the property in his name.[1] The court then entered a supplemental judgment awarding attorney fees and costs to TAS.
The issues on appeal include whether Wilcher waived his right to challenge the nonjudicial foreclosure sale under ORS 86.797(1) ; whether the trial court properly reformed the deed of trust to add Wilcher as a grantor; and whether the trial court erred in relying upon that reformed deed of trust to deny Wilcher's claims for quiet title and declaratory relief.[2] For the reasons explained below, we conclude that Wilcher is not precluded from challenging the propriety of the nonjudicial foreclosure sale under ORS 86.797(1), that the trial court erred in reforming the trust *525 deed and rejecting Wilcher's quiet title claim based on that reformation, and that the court erred in failing to declare the rights of the parties. We therefore reverse the general judgment and remand for further proceedings. Accordingly, we also reverse the supplemental judgment awarding fees and costs to TAS.
Although Wilcher asks us to exercise our discretion to conduct a de novo review of the facts in this equitable case, this is not an exceptional case justifying de novo review. See Muzzy v. Uttamchandani , 250 Or. App. 278, 280, 280 P.3d 989, rev. den. , 352 Or. 341, 288 P.3d 275 (2012) (quiet-title actions are equitable in nature); A & T Siding, Inc. v. Capitol Specialty Ins. Corp. , 358 Or. 32, 42, 359 P.3d 1178 (2015) (reformation is an equitable remedy); ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases."). Instead, we review the trial court's findings to determine whether there is any evidence in the record to support them, and its legal conclusions for legal error. See Frontgate Properties, LLC v. Bennett , 261 Or. App. 810, 812, 324 P.3d 483, rev. den. , 356 Or. 400, 339 P.3d 440 (2014) (stating standard of review when court declines to exercise discretion to review facts in an equitable case de novo ).
The following facts are undisputed. On July 18, 2007, Wilcher signed, in his personal capacity, a promissory note payable to The Mortgage Exchange (MEX) in the amount of $4,997,574; the note was also signed by Sierra, a company in which Wilcher was a member. The same day, Wilcher signed a trust deed to secure the note. The trust deed listed *317 Sierra as the sole grantor, and Wilcher's signature appears under a section titled "Corporate or Partnership Grantors." He signed the trust deed as "Eddie Wilcher, Member." The loan was meant to enable Sierra to develop a housing subdivision. However, in addition to properties owned by Sierra, the trust deed also listed, under a section labeled "Additional Security," three parcels of land that were owned by Wilcher personally. The property at issue in this appeal includes Wilcher's personal residence and 15 acres of land.
The preparation of the trust deed was overseen by Cruse, an employee of MEX with over 35 years of experience *526 preparing loan documents. According to Wilson, the CEO of MEX, Cruse "was a hundred percent responsible for making sure that [the loan documents] were accurate and represented what we were trying to per-proceed with the loan." When asked if Wilson ever found errors in the preparation of Cruse's documents, he answered,
"No. She probably is a premier person in the industry. She was past president of the Escrow Council, past chairman of the Appraisal Board when it was formed to try to get sanity in the-in appraisers doing mortgage work for loan companies and plus she just had all of the credentials that you would need to-to be-well, she was-she operated our escrow company for probably five years."
Wilson testified that, when MEX prepared the deed of trust, it intended to include Wilcher's residence as part of the collateral for the loan. He also acknowledged that both he and Cruse were aware that a deed of trust must name the owner of the property as a grantor. When confronted with the fact that the trust deed in this case did not include Wilcher as a grantor, Wilson stated that it was a mistake: "I think that if I had to do it over again, I would have put 'and Eddie Wilcher' on-on the additional secured property." However, he also testified that he would not be "alarmed" by the mistake because the property had been adequately described and included in the document, and because he assumed that the title company would read over the documents and find any errors prior to closing. Wilson testified that "that's not the proper way of doing it, but *** I think the title company probably went along with it too because it was already in the document."
Sierra subsequently defaulted on the loan. On December 3, 2012, TAS was appointed by the Washington County Circuit Court as receiver for Sierra. Between July 15 and August 8, 2013, Wilcher's attorney, Ratliff, exchanged emails with TAS concerning Wilcher's residence. Ratliff was authorized to enter into a settlement agreement with TAS whereby TAS agreed that, on receipt of $142,500 by October 9, 2013, it would release its trust deed securing Wilcher's residence. Wilcher failed to pay that sum and, on November 4, 2013, TAS initiated a nonjudicial foreclosure sale of the property. Wilcher was served with a notice of *527 sale in November 2013; the notice identified Sierra as the grantor on the trust deed.
On December 19, 2013, Wilcher filed suit against TAS for quiet title and declaratory relief in Klamath County Circuit Court. TAS filed an answer to the complaint, admitting that Wilcher owned the fee interest in the property and requesting that the court reform the deed of trust to add Wilcher as a grantor.
While that action was pending, on March 21, 2014, TAS conducted the nonjudicial foreclosure sale. TAS was the successful bidder at the sale.
On September 29, 2014, the Klamath County Circuit Court dismissed Wilcher's quiet-title action on the basis of improper venue. The same day, TAS filed an action for forcible entry and detainer in Washington County, seeking to evict Wilcher from his residence. On October 1, 2014, in a separate action, Wilcher brought suit in Washington County to quiet title to the property in his name and to obtain a declaration that TAS had no interest in the property. In response, TAS filed a counterclaim seeking to reform the deed of trust to add Wilcher, in his individual capacity, as a grantor.
The cases were consolidated for trial, after which the court granted TAS's claim for reformation of the trust deed and granted restitution *318 of the property to TAS. Specifically, the court found that, before he signed the trust deed, Wilcher "knew that by signing he was putting his own residence and the property up as collateral if they ever defaulted on the associated loan." The court also found that Wilcher's behavior after he signed the trust deed was "consistent with his understanding that his property was encumbered." The court ruled that reformation of the trust deed was appropriate because the omission of Wilcher's name as a grantor in the trust deed was a mistake that "was easily missed and the evidence [was] clear all parties intended to have Mr. Wilcher's individual property included as collateral." Additionally, the court determined that granting equitable relief in Wilcher's favor would reward "bad behavior" and would "impose a clear injustice to TAS." *528 Thus, the court denied Wilcher's request to quiet title to the property in his name. Although the court stated that it was denying Wilcher's request for declaratory relief, the general judgment did not declare the rights of the parties. The court then entered a supplemental judgment awarding attorney fees to TAS.
On appeal, Wilcher argues, among other things, that the trial court erred in denying his claims for quiet title and declaratory relief. He contends that, because he was not named as a grantor on the trust deed, the trust deed did not encumber his residential property. And, because Sierra-the named grantor-held no interest in the property, the nonjudicial foreclosure sale had no legal effect on Wilcher's interest in the property. Wilcher argues further that it was error for the trial court to reform the trust deed to name him as a grantor, and to then rely on the reformed deed of trust to validate the defective nonjudicial foreclosure sale.
In response, TAS does not contend that the nonjudicial foreclosure sale was valid at the time it took place. Rather, TAS argues that (1) Wilcher is judicially foreclosed, under ORS 86.797(1), from challenging the sale because he failed to commence an action to stay the foreclosure proceeding after being served with notice of the trustee's sale; (2) in any event, the trial court properly reformed the trust deed to add Wilcher as a grantor because the evidence showed that Wilcher intended to sign the trust deed in his personal capacity and to encumber his personal property; and (3) because the trust deed was properly reformed, the court did not err in relying on that reformation to deny Wilcher's quiet-title claim.
We begin with an overview of the Oregon Trust Deeds Act (OTDA), which was enacted in 1959 to provide an alternative to judicial foreclosure of security interests in real property. ORS 86.705 - 86.815. The OTDA "authorize[s] the use of trust deeds as security for home loans and allow[s] foreclosure of a defaulting homeowner's interest by means of a privately-conducted, advertised trustee's sale of the home rather than pursuant to a court-ordered, judicial foreclosure-provided, however, that certain statutory requirements are met."
*529 Niday v. GMAC Mortgage, LLC , 251 Or. App. 278, 284 P.3d 1157 (2012), aff'd , 353 Or. 648, 302 P.3d 444 (2013).
" 'The [OTDA] represents a well-coordinated statutory scheme [designed] to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor.' " Wolf v. GMAC Mortgage, LLC , 276 Or. App. 541, 548, 370 P.3d 1254 (2016) (quoting Staffordshire Investments, Inc. v. Cal-Western Reconveyance Corp. , 209 Or. App. 528, 542, 149 P.3d 150 (2006), rev. den. , 342 Or. 727, 160 P.3d 992 (2007) (first brackets in original; second brackets added) ). " '[I]n authorizing the use of trust deeds, the legislature sought to provide a more cost-effective means of foreclosing liens on real property and, in doing so, to expand the pool of capital available for small homeowners.' " DiGregorio v. Bayview Loan Servicing, LLC , 281 Or. App. 484, 491, 381 P.3d 961 (2016), rev. den. , 361 Or. 100, 391 P.3d 134 (2017) (quoting Brandrup v. ReconTrust Co. , 353 Or. 668, 711, 303 P.3d 301 (2013) (Kistler, J., concurring in part and dissenting in part) (citing Minutes, House Committee on Judiciary, SB 117, Apr. 16, 1959, at 1) (brackets in DiGregorio ) ). The OTDA also " 'reflect[s] the legislature's intent to protect the grantor against the unauthorized loss of its *319 property and to give the grantor sufficient opportunity to cure the default.' " DiGregorio , 281 Or. App. at 491, 381 P.3d 961 (quoting Staffordshire Investments, Inc. , 209 Or. App. at 542, 149 P.3d 150 (brackets in original) ).
Among other safeguards against unauthorized foreclosure, the OTDA requires that a trustee provide at least 120 days' notice to the grantor and other interested parties of a trustee's proposed sale of the property. See ORS 86.764. The OTDA also allows that a grantor may, at any time prior to five days before the date set for sale, cure the default and dismiss the proceedings. See ORS 86.778. If the trustee has complied with the statutory notice requirements and the default has not been cured, or the grantor or other interested party has not sought judicial intervention, then the trustee may sell the property at public auction to the highest bidder without judicial oversight. Brandrup , 353 Or. at 678, 303 P.3d 301.
We first address whether Wilcher is precluded, under ORS 86.797, from challenging the nonjudicial foreclosure *530 sale in this case. TAS argues that, under ORS 86.797(1), Wilcher waived his right to challenge the nonjudicial foreclosure sale because he did not seek any judicial intervention after being served with proper notice of the trustee's sale.
We have observed that certainty and finality are "important component[s] of the nonjudicial foreclosure sale remedy." Staffordshire Investments, Inc. , 209 Or. App. at 542, 149 P.3d 150. " ORS 86.797 establishes the legal effect of a trust deed foreclosure sale on those to whom notice of the sale has been given." DiGregorio , 281 Or. App. at 490, 381 P.3d 961 (internal quotation marks omitted). It provides, in part:
"(1) If, under ORS 86.705 to 86.815, a trustee sells property covered by a trust deed, the trustee's sale forecloses and terminates the interest in the property that belongs to a person to which notice of the sale was given under ORS 86.764 and 86.774 or to a person that claims an interest by, through or under the person to which notice was given. A person whose interest the trustee's sale foreclosed and terminated may not redeem the property from the purchaser at the trustee's sale. A failure to give notice to a person entitled to notice does not affect the validity of the sale as to persons that were notified."
ORS 86.797(1). We have explained that the clause "under ORS 86.705 to 86.815" is "merely descriptive of the type of sale to which the statute's provisions apply-that is, sales conducted by a trustee under the OTDA." DiGregorio , 281 Or. App. at 490, 381 P.3d 961. The clause "does not create substantive requirements or suggest that strict compliance with every provision of the OTDA is required before a person's property interests may be terminated by a trustee's sale." Id . (emphasis in original). In DiGregorio , for instance, we held that the grantor of a trust deed was precluded from challenging a nonjudicial foreclosure sale even though the trustee's notice of sale failed to identify the beneficiary of the trust deed. Id. at 490-94, 381 P.3d 961.
However, we have also held that ORS 86.797 cannot provide finality in a fundamentally flawed nonjudicial foreclosure sale. In Wolf , for example, we held that a nonjudicial foreclosure was invalid because the sale had not been conducted by a "trustee," as that term is defined by the OTDA, *531 regardless of the fact that the grantor had been given actual notice of the sale and had taken no action to delay or stop the sale. 276 Or. App. at 549, 370 P.3d 1254. We held that to construe the OTDA to "treat as final a sale conducted by one who is not a trustee would run afoul of the 'strict rules' and 'well-coordinated statutory scheme' that the legislature established for nonjudicial foreclosure." Id . at 548, 370 P.3d 1254. Likewise, in Staffordshire , we invalidated a nonjudicial foreclosure sale on the basis that there had not been a default on the loan, and thus the trustee lacked the power of sale. 209 Or. App. at 543-44, 149 P.3d 150. We observed that "there is nothing in the language of [the OTDA] to indicate that the legislature intended the auction to be final in the absence of legal authority to sell the property ." Id . at 542, 149 P.3d 150 (emphasis in original).
Here, it is undisputed that Sierra, the grantor of the trust deed that was the subject *320 of the trustee's sale, held no interest in Wilcher's property when Sierra granted the trust deed. Because Sierra held no interest in the property, it did not convey any interest in the property to TAS through the trust deed. As a result, TAS necessarily lacked the legal authority under its trust deed to sell the property in a nonjudicial foreclosure sale. The defect in this foreclosure proceeding is less like the scrivener's error described in DiGregorio , and more like the fundamental flaws described in Wolf and Staffordshire . We therefore conclude that Wilcher is not barred under ORS 86.797 from challenging this fundamentally flawed foreclosure sale.
We next address whether the trial court properly reformed the trust deed to add Wilcher as a grantor. Reformation is "an equitable remedy by which a court may revise the written expression of an agreement to conform to the intentions of the parties to it." A & T Siding, Inc. , 358 Or. at 42, 359 P.3d 1178. The remedy is
" 'available when the parties, having reached an agreement and having then attempted to reduce it to writing, fail to express it correctly in the writing. Their mistake is one as to expression-one that relates to the content or effect of the writing that is intended to express their agreement-and the appropriate remedy is reformation of that writing properly to reflect their agreement.' "
*532 Id . (quoting Restatement (Second) of Contracts § 155 comment a (1981) ). "There is a strong presumption that a deed expresses what the parties had in mind, and the burden of overcoming the presumption rests on the party seeking reformation." Murray v. Laugsand , 179 Or. App. 291, 300, 39 P.3d 241 (2002) (internal quotation marks and brackets omitted). Oregon courts may reform a written agreement, such as a trust deed, when the party seeking reformation establishes, by clear and convincing evidence, three things: (1) an antecedent agreement to which the contract can be reformed; (2) a mutual mistake or, alternatively, a unilateral mistake by one party along with inequitable conduct by the other party; and (3) the party seeking reformation was not grossly negligent. A & T Siding, Inc. , 358 Or. at 42-43, 359 P.3d 1178. With respect to the third requirement, the party seeking reformation bears the burden of proving the lack of gross negligence. Pioneer Resources, LLC v. D. R. Johnson Lumber Co. , 187 Or. App. 341, 372, 68 P.3d 233, rev. den. , 336 Or. 16, 77 P.3d 319 (2003).
Wilcher argues that TAS's proof of all three requirements was deficient, and, thus, the trial court erred in reforming the deed of trust. Because it is dispositive, we begin with the third requirement-lack of gross negligence. Wilcher asserts that TAS failed to prove that its predecessor in interest, MEX, was not grossly negligent in preparing the trust deed. He argues that MEX "had access to all of the information necessary to avoid its mistake," and its failure to obtain or utilize that information constituted gross negligence. In response, TAS appears to argue that, because Wilson and Cruse were highly qualified, they necessarily used "reasonable care to prepare the loan documents properly." TAS also contends that MEX "assumed that the title company in Klamath Falls would read all of the documents ***, presumably catching any errors. *** While there is certainly a mutual mistake, [MEX] was not 'grossly negligent.' "[3]
"The term 'gross negligence,' at least as it is used in the reformation context, is not well defined in the case law.
*533 Certainly, not all inattentive conduct by a party seeking reformation will bar equitable relief. Rather, conduct, in order to bar reformation, must go beyond mere oversight, inadvertence, or mistake and, instead, must amount to a degree of inattention that is inexcusable under the circumstance. *** '[G]ross negligence,' far from being a static concept subject to mechanical application, is one that requires careful consideration of the facts to determine if the party seeking reformation is, both in light of his or *321 her own actions and as a matter of equity, entitled to such relief."
Foster v. Gibbons , 177 Or. App. 45, 54, 33 P.3d 329 (2001) (internal citations omitted).[4] In Murray , we explained that, "[a]lthough the inquiry necessarily is fact-specific, 'in the context of mistakes of fact, a party is grossly negligent if it fails to obtain information "readily available" to it.' " 179 Or. App. at 304, 39 P.3d 241 (quoting Walcutt v. Inform Graphics, Inc. , 109 Or. App. 148, 152, 817 P.2d 1353 (1991), rev. den. , 312 Or. 589, 824 P.2d 418 (1992) ).
Here, the trial court made no explicit findings regarding whether MEX was grossly negligent in drafting the trust deed, other than to state that "[t]he mistake was easily missed." As explained below, there was insufficient evidence in the record for the court to find that the mistake was excusable under the circumstances.
Wilson testified that the failure to include Wilcher as a grantor was a mistake. He acknowledged that, to secure a loan on real property, a trust deed must name the owner of that property as a grantor. Wilson testified that he was not alarmed by the mistake in the trust deed because he knew that Wilcher's property had been included as additional security in the trust deed, and because he assumed that the title company in Klamath Falls would read over the documents and catch any errors before closing. The record *534 demonstrates that MEX had all of the pertinent information available to it before drafting the trust deed-including knowledge that Wilcher personally owned the property included as additional security in the trust deed and that Wilcher had signed a promissory note in his capacity as an individual property owner rather than as a member of Sierra on the same day that he signed the trust deed. The record also demonstrates that MEX was under no time constraints when it drafted and executed the trust deed.
Under the circumstances presented in this case, no factfinder could conclude that failing to name Wilcher as a grantor was "mere oversight, inadvertence, or mistake." Foster , 177 Or. App. at 54, 33 P.3d 329. While we have said that "a party's failure to read a document, by itself, will generally not constitute gross negligence sufficient to bar reformation," Murray , 179 Or. App. at 307, 39 P.3d 241 (emphasis added), the omission of a crucial term when drafting a trust deed can rise to the level of gross negligence. For instance, in Foster , we concluded that it was gross negligence when the defendant, who was seeking reformation of a land-sale contract, failed to resolve discrepancies in the legal description of property before giving her attorney a copy of that description to incorporate into the land sale contract and then proceeding with the sale. 177 Or. App. at 55, 33 P.3d 329. We explained that the "defendant did not simply fail to understand the effect of her written contract with plaintiff." Id . Rather, under the circumstances, her "failure to investigate and resolve any alleged discrepancies in the legal description, and her willingness to proceed with the sale without modifying the legal description, constitute[d] gross negligence sufficient to bar reformation." Id . at 55-56, 33 P.3d 329.
Here, despite knowing that Wilcher owned the property listed as additional security, MEX employees drafted and then executed the trust deed without ensuring the accuracy of a crucial term in the document-that all of the owners of the property included in the deed were named as grantors. There was no evidence in the record to suggest that the mistake was a product of misrepresentation or was affected by time constraints. In fact, when questioned about the error in drafting the trust deed, Wilson explained that he was not concerned because other entities would catch the *535 mistake before closing. Absent some evidence to justify inattention to such a key term in the trust deed, no factfinder *322 could conclude that MEX's failure to name Wilcher as a grantor amounts to a degree of negligence that is excusable under the circumstances. Cf. Pioneer Resources , 187 Or. App. at 373-74, 68 P.3d 233 (concluding that "oversight in failing to read documents that might correct a party's mistaken understanding of some aspect of the transaction may, rather than constituting gross negligence precluding reformation, be excusable neglect, arising from the party's reliance on the terms as expressed in the previous agreement between the parties"); Kish v. Kustura , 190 Or. App. 458, 464, 79 P.3d 337 (2003), rev. den. , 336 Or. 615, 90 P.3d 626 (2004) (finding no gross negligence in failing to have contract translated into native language when evidence showed that the party seeking reformation was presented with the contract the day he was to sign it and was given oral assurance that the contract reflected a prior agreement); Edwards Farms v. Smith Canning Co. , 197 Or. 57, 64, 251 P.2d 133 (1952) (no gross negligence when evidence showed that contract was "hastily" drawn and the error was called to the defendant's attention and corrected some days later). We therefore conclude that the trial court erred in granting TAS's request for reformation of the trust deed to add Wilcher as a grantor.
Having determined that the court erred in reforming the deed of trust, it follows that the court also erred in denying Wilcher's claims for quiet title and declaratory relief. Those rulings were entirely dependent on the court's reformation of the deed of trust. Under a section entitled "REFORMATION," the general judgment states:
"2. The Deed of Trust dated July 18, 2007 * * * is hereby reformed by revising the persons specified as 'Grantor' on page one to read: 'Sierra Developments, LLC and Eddie Wilcher, as their interests appear.'
"3. Accordingly , the trustee's non-judicial foreclosure sale conducted March 21, 2014, was lawfully and properly conducted. The Trustee's Deed *** is valid and effective according to its terms."
(Emphasis added.) Because they were reliant on an erroneously reformed deed of trust, the court's determinations *536 about the validity of the trustee's sale and the resulting ownership of the property were legally erroneous.
We next consider the appropriate disposition of this appeal in light of the trial court's error. Wilcher's second claim for relief sought a declaration from the trial court that TAS and their successors in interest had no interest in the property, and that the nonjudicial foreclosure sale and resulting trustee's deed were invalid. However, the general judgment fails to make any declaration of the parties' rights as to those issues. On remand, the trial court should enter a judgment that declares the rights of the parties consistently with this opinion. See ORS 28.020 ("Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."); Beldt v. Leise , 185 Or. App. 572, 576, 60 P.3d 1119 (2003) ("If there is a justiciable controversy, the plaintiff is entitled to a declaration of its rights[.]").
General judgment reversed and remanded for trial court to enter a judgment consistent with this opinion that declares the parties' rights; supplemental judgment reversed.

The general judgment ordered that Wilcher had nine days to pay $142,500 to TAS in exchange for a quitclaim deed conveying the property to him. It further ordered that, if Wilcher failed to make that payment, he was required to vacate the property and TAS was entitled to enforce the judgment of restitution in the manner provided by law.

Wilcher also challenges the trial court's denial of his request for a continuance of the trial date and its award of attorney fees and costs to TAS. However, our disposition obviates the need to address those assignments of error. We also reject without published discussion Wilcher's challenge to the trial court's denial of his motion to dismiss the forcible entry and detainer action.

The parties agree that the issue is whether MEX was grossly negligent in drafting and executing the trust deed, and not whether TAS was grossly negligent once it became the successor in interest. We therefore focus our analysis on MEX's conduct in drafting and executing the trust deed.

We acknowledge that the cases we cite regarding gross negligence were subject to de novo review. Although they employed a different standard of review of the facts, the legal principles delineated in those cases are still relevant to our analysis. Cf. State v. B. B. , 240 Or. App. 75, 84, 245 P.3d 697 (2010) ("We fully appreciate that each of those cases was subject to de novo review. Nevertheless, our disposition in each instance ultimately derived from legal principles that apply and control regardless of the standard of appellate review pertaining to the predicate facts.").